### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIANE P. KRAWCZYNSKI,<br>　　　　Plaintiff<br>v.<br><br>SPRINGFIELD PUBLIC SCHOOLS,<br>THE CITY OF SPRINGFIELD AND<br>SHEILA D. HOFFMAN<br>　　　　Defendants. | Civil Action No. 3:17-cv-30166<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

## I.    INTRODUCTION

Plaintiff Diane P. Krawczynski ("Ms. Krawczynski" or "Plaintiff") brings this action for damages against the Springfield Public Schools ("SPS"), the City of Springfield ("City") and Principal Sheila D. Hoffman ("Principal Hoffman"), (collectively referred to herein as "Defendants").  As detailed more fully herein, Ms. Krawczynski brings claims of discrimination and retaliation against Defendants under the Americans with Disabilities Act, the Rehabilitation Act, and Mass. Gen. Laws Chapter 151B.

## II.    PARTIES

1.  Plaintiff Diane P. Krawczynski ("Ms. Krawczynski" or "Plaintiff") is an individual residing in Massachusetts who may be contacted through the undersigned counsel.

2.  Defendant the Springfield Public Schools ("SPS") is a school district in Massachusetts that receives federal financial assistance.

3.  Defendant the City of Springfield ("City") is a municipality that receives federal financial assistance with regard to the education of students at the SPS.  Ms. Krawczynski's paychecks were issued by the City of Springfield.

Complaint- 1

4. Defendant Principal Sheila Hoffman ("Principal Hoffman") was Ms. Krawczynski's supervisor during the relevant period.  Upon information and belief, Principal Hoffman resides in Hampden County.

## III.    JURISDICTION AND VENUE

5. The Court has personal jurisdiction over each of the defendants and has subject matter jurisdiction over this controversy, based on, among other things, the federal statutory causes of action pled herein.  This Court has pendent jurisdiction with regard to the state-law claims asserted herein.

6. Venue is proper in the Western Division because SPS and the City are located in Hampden County.  Moreover, Defendant Principal Hoffman works within Hampden County.   In addition, venue is proper because the wrongful acts complained of occurred in Hampden County.

## IV.    FACTUAL BACKGROUND

7. Ms. Krawczynski has been a teacher employed by the Springfield Public Schools ("SPS") since 1986.

8. Since the fall of 2000, Ms. Krawczynski has been employed at the Dryden Memorial Elementary School ("Dryden").

9. From 2006 to 2015, Ms. Krawczynski taught science to grades Kindergarten through Grade 5 at Dryden.

10. In this role, Ms. Krawczynski taught from her own science classroom up until November 2014, when the new principal, Sheila Hoffman ("Principal Hoffman") required Ms. Krawczynski to teach from a traveling cart.

11. When Ms. Krawczynski was first asked to teach science at Dryden in 2006, she informed the current principal, Ann Dryden, that she would do so only on the condition that she have her own classroom.

12. Ms. Krawczynski requested her own classroom because she had had back surgery for a ruptured disc in 1995 and continued to have issues with her back.

13. Principal Dryden honored Ms. Krawczynski's request and provided her with her own classroom.

14. In 2010, Ms. Krawczynski continued to teach science in a classroom under Principal Dryden's successor, Diane Brouillard.

15. At all relevant times, Ms. Krawczynski has been a highly qualified and successful teacher with a back condition.

16. In November of 2014, more than two months into the school year, Principal Hoffman informed Ms. Krawczynski that she would no longer have her science classroom.

17. Ms. Krawczynski was shocked and very upset. She informed Principal Hoffman that she had a back condition as she had had back surgery in 1995.

18. In response, Principal Hoffman simply replied, "Sorry."

19. Ms. Krawczynski was then required to travel from classroom to classroom to teach science to over 300 students in grades Kindergarten to Grade 5.

20. Ms. Krawczynski was promised a large cart so she could take her teaching materials with her.

21. Being placed on a cart made Ms. Krawczynski's job more physically challenging and it was a logistical nightmare.

22. Ms. Krawczynski taught six different science curriculums at one time and few teachers provided storage in their classrooms.

23. The first cart provided to Ms. Krawczynski was very small. Within a month a new cart was provided, but it was very heavy and cumbersome.

24. Teaching from a cart meant that Ms. Krawczynski had to pack up and travel to different classrooms every 40 minutes and had only five minutes to set up and travel to different classrooms.

25. Teaching science from a cart also required Ms. Krawczynski to repeatedly lift, carry, and move items, including heavy ones, to various classrooms.

26. The repetitive pushing, lifting and moving of heavy items was detrimental to Ms. Krawczynski's disability.

27. When Principal Hoffman first informed Ms. Krawczynski that she would have to leave her classroom, she told Ms. Krawczynski that she had two weeks to pack up her room and offered Ms. Krawczynski a few days off from teaching along with custodial help.

28. However, the custodians were never scheduled to help and when needed, they were never available.

29. Ms. Krawczynski felt forced to move everything herself in the time provided.

30. During the transition to a cart, Ms. Krawczynski continued to teach both in and out of her classroom and stayed late every day during that time so family could come and help her move.

31. Ms. Krawczynski was directed to move her teaching materials to the back of a stage area in the gymnasium.

32. This area was a cluttered, dirty, and poorly lit space behind dark stage curtains.

**Complaint- 4**

33. This area was also used to store other things including gym equipment such as a balance beam and mats as well as a portable SmartBoard.

34. On or about November 20, 2017, while Ms. Krawczynski was in the process of moving her teaching materials out of her classroom, Principal Hoffman asked her about her progress and how she was doing.  When Ms. Krawczynski informed Principal Hoffman that her back was bothering her, Principal Hoffman dismissed her remark.

35. Not only did Ms. Krawczynski no longer have a classroom, but she also no longer had a desk or workspace to organize her science materials.  Ms. Krawczynski was forced to create a makeshift "desk" out of a large box that contained a hot laminator that was not being used at the time.

36. In addition to her teaching materials, which were stacked and scattered about, Ms. Krawczynski's teaching area was lit by a motion sensitive light fixture in the ceiling that constantly left her in the dark.

37. This makeshift storage area where Ms. Krawczynski was forced to work when she was not teaching in a classroom from her cart was unsafe and hazardous because of the clutter and lack of sufficient lighting.   After informing Principal Hoffman and the custodians about the lighting issue and receiving no assistance in correcting the problem, Ms. Krawczynski attempted to resolve the lighting issue herself.   However, when she did so, she was reprimanded.

38. In contrast, the science teacher who would replace Ms. Krawczynski after she was forced to take leave was provided with a cleaned-up workspace, shelfing, a desk, a new desk chair, work tables, improved lighting and a lighter work schedule and workload.

39. Upon information and belief, the science teacher who replaced Ms. Krawczynski has no disability.

40. After Ms. Krawczynski was forced to teach from a cart, Principal Hoffman, who had no prior elementary science experience or elementary administrative experience, repeatedly and unexpectedly observed Ms. Krawczynski and gave her consistently poor evaluations.

41. Ms. Krawczynski's first negative evaluation occurred on or about December 5, 2014, shortly after she was placed on a small cart and was teaching in an oversized kindergarten classroom.  Among a list of criticisms, Principal Hoffman said that Ms. Krawczynski had "inappropriate pacing" and essentially that she was unable to move about this unfamiliar classroom quickly enough.

42. After three months of intense scrutiny and "unsatisfactory" evaluations, Principal Hoffman placed Ms. Krawczynski on a punishing and unattainable 44-day improvement plan in March of 2015.  Ms. Krawczynski was told that if she did not show improvement within that time period, she could be terminated.

43. During this time, as a result of the constant pushing and heavy lifting and her disability, Ms. Krawczynski experienced increased back and foot pain.

44. Beginning in the spring of 2015, Ms. Krawczynski began taking medication for anxiety and depression.  Prior to Ms. Krawczynski's deteriorating work conditions, Ms. Krawczynski had never required medical treatment for a mental condition.

45. As a result of the unwarranted criticisms and discriminatory behavior of Defendants, Ms. Krawczynski also began therapy for acute anxiety and stress in the spring of 2015.

46. In addition to the back and foot point she experienced because of her disability, after Ms. Krawczynski was placed on a cart, and as a result of the repetitive pushing and moving of

heavy items, Ms. Krawczynski was later diagnosed with plantar fasciitis – which required therapy and exercise to treat.

47. In May of 2015, after months of continued scrutiny and unwarranted criticism, Principal Hoffman stated that Ms. Krawczynski had failed to show improvement; as a result, Principal Hoffman indicated that she would be observing Ms. Krawczynski even more frequently before making a decision about Ms. Krawczynski's continued employment.

48. Due to Defendants' discriminatory actions, Ms. Krawczynski was forced to take a leave of absence in or around May of 2015.

49. Ms. Krawczynski began the 2015-2016 school year in August when she attended science professional development.

50. Shortly thereafter in September of 2015, Ms. Krawczynski presented SPS and Principal Hoffman with a doctor's note indicating that "[d]ue to her persistent permanent back condition that has required surgery, she [was] unable to push a cart. She [could not] lift, carry, or move anything over 10 pounds."

51. On or about November 3, 2015, Defendants informed Ms. Krawczynski that they were trying to determine if Ms. Krawczynski could be accommodated based upon her doctor's note and provided Ms. Krawczynski with a Request for Accommodation form to complete.

52. In light of her disability and related restrictions, as well as the treatment she was receiving, Ms. Krawczynski requested accommodations and submitted the form to Defendants.

53. Ms. Krawczynski indicated that as part of her accommodations she was not able to push a cart, not able to lift, carry or move anything over 10 pounds – and, given Principal Hoffman's behavior – that she was not able to work at Dryden.  In support of these accommodations, she provided both a doctor's note and a note from her treating therapist.

**Complaint- 7**

54. However, Principal Hoffman and SPS failed to provide accommodations and forced Ms. Krawczynski to go out on leave and use up all of her remaining sick time (which amounted to approximately 91 days).

55. Rather than offer any accommodations, Principal Hoffman sent a certified letter of intent to terminate Ms. Krawczynski's employment, which Ms. Krawczynski received on or about December 18, 2015.

56. In January of 2016, with her sick days running low and no accommodations having being provided, Ms. Krawczynski requested additional paid sick time through the sick bank offered by SPS.  However, despite her diligence in following up with her request, Ms. Krawczynski was informed approximately three weeks later that her request was denied because the sick bank committee claimed that her doctor's note was out of date.  Ms. Krawczynski did not receive any paid days from the sick bank until approximately two months after her original request.

57. As a result of Defendants' failure to engage in an interactive dialogue, Ms. Krawczynski went without pay for approximately three months during the 2015-2016 school year.

58. Believing that her employment at Dryden was a risk given Defendants' failure to accommodate her disability (or perceived disability) and failure to engage in an interactive dialogue, Ms. Krawczynski applied to approximately 20 job postings between June of 2015 and June of 2016, all within SPS.

59. Despite her experience and qualifications, Ms. Krawczynski was not offered a position for any of the jobs for which she applied.

60. Moreover, Defendants, knowing that Ms. Krawczynski was not able to work from a cart and was not willing to offer her accommodations to teach science, failed to provide any support in procuring any of these alternative positions.

61. Instead, in March of 2016, approximately six months after Ms. Krawczynski provided her doctor's note, SPS informed Ms. Krawczynski that she needed to provide a new doctor's note as SPS claimed that the one she had provided was too vague.

62. Only after Ms. Krawczynski used up all of her sick time and had to go without pay for a period of time, did SPS and Principal Hoffman provide Ms. Krawczynski a temporary position in May of 2016, towards the end of the school year.

63. This position was for temporarily teaching Kindergarten at Dryden.

64. However, Defendants knew that this temporary position had been available since September of 2015 as the regular teacher had been out on leave since that time.

65. Rather than offer this temporary Kindergarten position to Ms. Krawczynski in September of 2015, when she had provided her doctor's note, Defendants hired a few different substitute teachers throughout the year to fill the position.

66. In or around May 20, 2016, Ms. Krawczynski filed her charge with the Massachusetts Commission Against Discrimination ("MCAD") and Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination based upon her disability.

67. After Ms. Krawczynski filed her initial charge, she continued to apply for other vacant positions within SPS so that she would no longer have to work under Principal Hoffman at Dryden; she was not offered any of the positions for which she applied.

68. Commencing in the fall of 2016 school year, Ms. Krawczynski was placed at Dryden, under Principal Hoffman's supervision, as an intervention teacher.

69. However, in this position Ms. Krawczynski remained on a "Directed Growth Plan" which was, in essence, an improvement plan.

70. In addition, in this role, Ms. Krawczynski was the only teacher at Dryden required to submit her plans on a weekly basis for review.

71. Though Ms. Krawczynski had worked for four summers at Dryden in a summer school position, after she filed her charge of discrimination, Principal Hoffman passed over her application and informed Ms. Krawczynski that she was not qualified for the position.

72. In or around September 8, 2017, the MCAD allowed Ms. Krawczynski to amend her initial charge to include claims of retaliation and to name Principal Hoffman and The City of Springfield.

73. In or around October 19, 2017, the MCAD provided the undersigned counsel with a letter dismissing Ms. Krawczynski's complaint and allowing her to proceed with a private lawsuit.  The letter authorizing a private suit is attached hereto as Exhibit A and incorporated by referenced.

## V.      LEGAL CLAIMS

### Count One
### Discrimination and Failure to Accommodate in Violation of the ADA –
### 42 U.S.C. § 12101 *et seq.*
### *Against SPS and the City*

74. Plaintiff realleges each and every allegation set forth in the preceding paragraphs and incorporates the same by reference.

75. At all relevant times at Dryden, Ms. Krawczynski was a qualified individual with a disability as defined by the Americans with Disabilities Act ("ADA") as amended through the ADA Amendments of 2008 and able to work with or without accommodations.

76. Ms. Krawczynski's disability substantially limits one or more life activities – including, without limitation, pushing, lifting, moving, or carrying items over a certain weight. It also substantially limits her ability to work as a school teacher when required to perform those physical activities, especially when required to do so on a repetitive basis.

77. Defendants viewed Ms. Krawczynski differently because of her disability or perceived disability.

78. For example, Ms. Krawczynski was treated differently from her non-disabled replacement. While Ms. Krawczynski was forced to store her teaching items and work in a space that was cluttered, dark, and did not even have a desk, Ms. Krawczynski's non-disabled replacement was given a desk, storage space, and provided with adequate lighting.

79. Defendants used Ms. Krawczynski's disability as a basis for discriminating against her by, among other things, making Ms. Krawczynski's job more difficult by requiring her to repetitively push a cart and lift heavy objects while at the same time providing her with overly critical evaluations and placing her on an improvement plan.

80. As a result of Defendants' behavior, Ms. Krawczynski's disability was exacerbated and resulted in her needing to seek treatment for anxiety, depression, and stress.

81. Ms. Krawczynski reminded Defendants of her disability and, after months of attempting to teach from a cart, presented Defendants with a doctor's note, and requested accommodations.

82. Instead of engaging in an interactive dialogue or providing her with accommodations, Defendants forced Ms. Krawczynski to use up all of her sick time, go without pay for a period of time, and provided Ms. Krawczynski with an intent to terminate letter.

83. Moreover, Defendants' continued to discriminate against her by failing to assist her while Ms. Krawczynski applied for approximately 20 open job postings within SPS between June of 2015 and June of 2016.   Ms. Krawczynski was denied every position she applied for, even though she was qualified to teach and/or to be placed in those positions.

84. In addition, the position Defendants provided to Ms. Krawczynski as an accommodation (which she did not assume until May of 2016) could have been offered to her in September of 2015.

85. Even when Ms. Krawczynski was provided an accommodation, she remained on an improvement plan and was required to submit her teaching plans on a weekly basis for review.

86. As a direct and proximate result of Defendants' unlawful discrimination, Ms. Krawczynski has suffered damages.

87. The unlawful employment practices complained of above were intentional.

88. The unlawful employment practices complained of above were done with malice or with reckless indifference to the protected rights of Ms. Krawczynski.

**Count Two**
**Discrimination and Failure to Accommodate in Violation of the Rehabilitation Act**
*Against SPS and the City*

89. Plaintiff realleges each and every allegation set forth in the preceding paragraphs and incorporates the same by reference.

90. At all relevant times at Dryden, Ms. Krawczynski was a qualified individual with a disability as set forth in the Rehabilitation Act.

91. Ms. Krawczynski's disability substantially limits one or more life activities – including, without limitation, pushing, lifting, moving, or carrying items over a certain weight. It also

substantially limits her ability to work as a school teacher when required to perform those physical activities, especially when required to do so on a repetitive basis.

92. Defendants viewed Ms. Krawczynski differently because of her disability or perceived disability.

93. For example, Ms. Krawczynski was treated differently from her non-disabled replacement. While Ms. Krawczynski was forced to store her teaching items and work in a space that was cluttered, dark, and did not even have a desk, Ms. Krawczynski's non-disabled replacement was given a desk, storage space, and provided with adequate lighting.

94. Defendants used Ms. Krawczynski's disability as a basis for discriminating against her by, among other things, making Ms. Krawczynski's job more difficult by requiring her to repetitively push a cart and lift heavy objects while at the same time providing her with overly critical evaluations and placing her on an improvement plan.

95. As a result of Defendants' behavior, Ms. Krawczynski's disability was exacerbated and resulted in her needing to seek treatment for anxiety, depression, and stress.

96. Ms. Krawczynski reminded Defendants of her disability and, after months of attempting to teach from a cart, presented Defendants with a doctor's note, and requested accommodations.

97. Instead of engaging in an interactive dialogue or providing her with accommodations, Defendants forced Ms. Krawczynski to use up all of her sick time, go without pay for a period of time, and provided Ms. Krawczynski with an intent to terminate letter.

98. Moreover, Defendants' continued to discriminate against her by failing to assist her while Ms. Krawczynski applied for approximately 20 open job postings within SPS between June

of 2015 and June of 2016.    Ms. Krawczynski was denied every position she applied for, even though she was qualified to teach and/or to be placed in those positions.

99. In addition, the position Defendants provided to Ms. Krawczynski as an accommodation (which she did not assume until May of 2016) could have been offered to her in September of 2015.

100.    Even when Ms. Krawczynski was provided an accommodation, she remained on an improvement plan and was required to submit her teaching plans on a weekly basis for review.

101.    As a direct and proximate result of Defendants' unlawful discrimination, Ms. Krawczynski has suffered damages.

102.    The unlawful employment practices complained of above were intentional.

103.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the protected rights of Ms. Krawczynski.

**Count Three**
**Discrimination and Failure to Accommodate in Violation of M.G.L. c. 151B**
*Against all Defendants*

104.    Plaintiff realleges each and every allegation set forth in the preceding paragraphs and incorporates the same by reference.

105.    At all relevant times during her employment at Dryden, Ms. Krawczynski was a qualified individual with a handicap as defined by Mass. Gen. Laws, Chapter 151B.

106.    Ms. Krawczynski's disability substantially limits one or more life activities – including, without limitation, pushing, lifting, moving, or carrying items over a certain weight. It also substantially limits her ability to work as a school teacher when required to perform those physical activities, especially when required to do so on a repetitive basis.

107.     Defendants viewed Ms. Krawczynski differently because of her disability or perceived disability.

108.     For example, Ms. Krawczynski was treated differently from her non-disabled replacement.  While Ms. Krawczynski was forced to store her teaching items and work in a space that was cluttered, dark, and did not even have a desk, Ms. Krawczynski's non-disabled replacement was given a desk, storage space, and provided with adequate lighting.

109.     Defendants used Ms. Krawczynski's disability as a basis for discriminating against her by, among other things, making Ms. Krawczynski's job more difficult by requiring her to repetitively push a cart and lift heavy objects while at the same time providing her with overly critical evaluations and placing her on an improvement plan.

110.     As a result of Defendants' behavior, Ms. Krawczynski's disability was exacerbated and resulted in her needing to seek treatment for anxiety, depression, and stress.

111.     Ms. Krawczynski reminded Defendants of her disability and, after months of attempting to teach from a cart, presented Defendants with a doctor's note, and requested accommodations.

112.     Instead of engaging in an interactive dialogue or providing her with accommodations, Defendants forced Ms. Krawczynski to use up all of her sick time, go without pay for a period of time, and provided Ms. Krawczynski with an intent to terminate letter.

113.     Moreover, Defendants' continued to discriminate against her by failing to assist her while Ms. Krawczynski applied for approximately 20 open job postings within SPS between June of 2015 and June of 2016.   Ms. Krawczynski was denied every position she applied for, even though she was qualified to teach and/or to be placed in those positions.

114.     In addition, the position Defendants provided to Ms. Krawczynski as an accommodation (which she did not assume until May of 2016) could have been offered to her in September of 2015.

115.     Even when Ms. Krawczynski was provided an accommodation, she remained on an improvement plan and was required to submit her teaching plans on a weekly basis for review.

116.     As a direct and proximate result of Defendants' unlawful discrimination, Ms. Krawczynski has suffered damages.

117.     The unlawful employment practices complained of above were intentional.

118.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the protected rights of Ms. Krawczynski.

**Count 4**
**Retaliation in Violation of the ADA – 42 U.S.C. § 12101 *et seq.***
***Against SPS and the City***

119.     Plaintiff realleges each and every allegation set forth in the preceding paragraphs and incorporates the same by reference.

120.     Ms. Krawczynski engaged in a protected activity by requesting accommodations for her disability or perceived disability and opposing Defendants' discriminatory conduct.

121.     After Ms. Krawczynski requested accommodations, rather than provide Ms. Krawczynski with accommodations or engage in an interactive dialogue, Defendants sent Ms. Krawczynski an intent to terminate letter.

122.     Moreover, Defendants retaliated against Ms. Krawczynski by delaying offering an accommodation until the end of the 2015-2016 school year, requiring her to use all of her accumulated sick time, and forcing Ms. Krawczynski to go without pay.

123.    In addition, Defendants retaliated against Ms. Krawczynski by failing to assist her in finding another position within SPS and rejecting her from all of the positions for which she did apply.

124.    Ms. Krawczynski further engaged in protected activity by filing her charge of discrimination.

125.    After Ms. Krawczynski filed her charge of discrimination, Defendants further retaliated against her by placing her on an improvement plan.

126.    Defendants further retaliated against Ms. Krawczynski by requiring her to submit weekly lesson plans for review.

127.    After Ms. Krawczynski filed her charge of discrimination, Defendants retaliated against her by continuing to fail in assisting her in locating a permanent position and denying her positions within SPS for which she was qualified.

128.    After Ms. Krawczynski filed her charge of discrimination, Defendants retaliated against her by passing her over for her regular summer school position at Dryden and claimed she was no longer qualified for the position.

129.    As a direct and proximate result of Defendants' unlawful practices, Ms. Krawczynski has suffered damages.

130.    The unlawful employment practices complained of above were intentional.

131.    The unlawful practices complained of above were done with malice or with reckless indifference to the protected rights of Ms. Krawczynski.

**Count 5**
**Retaliation in Violation of the Rehabilitation Act – Section 504**
*Against SPS and the City*

132.     Plaintiff realleges each and every allegation set forth in the preceding paragraphs

and incorporates the same by reference.

133.     Ms. Krawczynski engaged in a protected activity by requesting accommodations

for her disability or perceived disability and opposing Defendants' discriminatory conduct.

134.     After Ms. Krawczynski requested accommodations, rather than provide Ms.

Krawczynski with accommodations or engage in an interactive dialogue, Defendants sent

Ms. Krawczynski an intent to terminate letter.

135.     Moreover, Defendants retaliated against Ms. Krawczynski by delaying offering an

accommodation until the end of the 2015-2016 school year, requiring her to use all of her

accumulated sick time, and forcing Ms. Krawczynski to go without pay.

136.     In addition, Defendants retaliated against Ms. Krawczynski by failing to assist her

in finding another position within SPS and rejecting her from all of the positions for which

she had applied.

137.     Ms. Krawczynski further engaged in protected activity by filing her charge of

discrimination.

138.     After Ms. Krawczynski filed her charge of discrimination, Defendants retaliated

against her by placing her on an improvement plan.

139.     Defendants further retaliated against Ms. Krawczynski by requiring her to submit

weekly lesson plans for review.

140.     After Ms. Krawczynski filed her charge of discrimination, Defendants retaliated against her by continuing to fail in assisting her in locating a permanent position and denying her positions in SPS for which she was qualified.

141.     After Ms. Krawczynski filed her charge of discrimination, Defendants retaliated against her by passing her over for her regular summer school position at Dryden and claimed she was no longer qualified for the position.

142.     As a direct and proximate result of Defendants' unlawful practices, Ms. Krawczynski has suffered damages.

143.     The unlawful employment practices complained of above were intentional.

144.     The unlawful practices complained of above were done with malice or with reckless indifference to the protected rights of Ms. Krawczynski.

**Count 6**
**Retaliation in Violation of M.G.L. c. 151B**
*Against All Defendants*

145.     Plaintiff realleges each and every allegation set forth in the preceding paragraphs and incorporates the same by reference.

146.     Ms. Krawczynski engaged in a protected activity by requesting accommodations for her disability or perceived disability and opposing Defendants' discriminatory conduct.

147.     After Ms. Krawczynski requested accommodations, rather than provide Ms. Krawczynski with accommodations or engage in an interactive dialogue, Defendants sent Ms. Krawczynski an intent to terminate letter.

148.     Moreover, Defendants retaliated against Ms. Krawczynski by delaying offering an accommodation until the end of the 2015-2016 school year, requiring her to use all of her accumulated sick time, and forcing Ms. Krawczynski to go without pay.

149.     In addition, Defendants retaliated against Ms. Krawczynski by failing to assist her in finding another position within SPS and rejecting her from all of the positions for which she had applied.

150.     Ms. Krawczynski further engaged in protected activity by filing her charge of discrimination.

151.     After Ms. Krawczynski filed her charge of discrimination, Defendants retaliated against her by placing her on an improvement plan.

152.     Defendants further retaliated against Ms. Krawczynski by requiring her to submit weekly lesson plans for review.

153.     After Ms. Krawczynski filed her charge of discrimination, Defendants retaliated against her by continuing to fail in assisting her in locating a permanent position and denying her positions in SPS for which she was qualified.

154.     After Ms. Krawczynski filed her charge of discrimination, Defendants retaliated against her by passing her over for her regular summer school position at Dryden and claimed she was no longer qualified for the position.

155.     As a direct and proximate result of Defendants' unlawful practices, Ms. Krawczynski has suffered damages.

156.     The unlawful employment practices complained of above were intentional.

157.     The unlawful practices complained of above were done with malice or with reckless indifference to the protected rights of Ms. Krawczynski.

## VI.     PRAYERS FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Judgment against Defendants and damages for the injuries caused by Defendants as described above;

**Complaint- 20**

B.  For enhanced and exemplary damages as provided by applicable Massachusetts and federal

law;

C.  For attorneys' fees, interest, and costs; and

D.  Such other and further relief as this Court deems appropriate.

### VII.   JURY TRIAL DEMANDED

Ms. Krawczynski requests a JURY TRIAL on all issues so triable.

Respectfully submitted,
DIANE KRAWCZYNSKI
By her attorneys,


*/s/ Shehzad Rajwani*
Shehzad S. Rajwani (BBO # 674442)
Lucia A. Passanisi (BBO # 691189)
THE HARBOR LAW GROUP
300 West Main Street, Bldg. A, Unit1
Northborough, MA  01532
(508) 393-9244 – Phone
(508) 393-9245 – Fax
Email: srajwani@harborlaw.com
Email: lpassanisi@harborlaw.com

November 10, 2017

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


*/s/ Shehzad S. Rajwani*

**Complaint- 21**